**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEFAN E. EVANS,<br><br>       Petitioner,<br><br>    v.<br><br>SOTO, Warden,<br><br>       Respondent. | Case No. 1:12-cv-01652-LJO-BAM-HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY RESPONDENT'S MOTION TO DISMISS (DOC. 17), DISMISS PETITIONER'S MOTIONS AS MOOT (DOCS. 19, 21, 22), AND TO REFER THE CASE BACK TO THE MAGISTRATE JUDGE<br><br>**OBJECTIONS DEADLINE:**<br>**THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the Respondent's motion to dismiss the petition as untimely, which was filed on March 28, 2013.  Petitioner filed opposition in several documents, including 1) a motion to excuse harmless negligence, which was filed on April 24, 2013, and which related in part to the present motion; 2) a declaration regarding appointment of counsel, which was filed on April 29, 2013; and 3) supplemental opposition filed on June 3, 2013.  The Court

1

considers Petitioner's supplemental opposition to be timely because the matters submitted were not available earlier due to institutional delays at Petitioner's institution of confinement. (Doc. 22, 2.)  Although the time for filing a reply has passed, no reply was filed.

I.   <u>Proceeding by a Motion to Dismiss</u>

Respondent has filed a motion to dismiss the petition on the ground that Petitioner filed his petition outside of the one-year limitation period provided for by 28 U.S.C. § 2244(d)(1).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules.  <u>See, e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).  Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4 standards to review a motion to dismiss filed before a formal answer.  <u>See</u>, <u>Hillery</u>, 533 F. Supp. at 1194 & n.12.

2

In this case, Respondent's motion to dismiss addresses the untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1).  The material facts pertinent to the motion are mainly to be found in copies of the official records of state judicial proceedings which have been provided by Respondent and Petitioner, and as to which there is no factual dispute.  Because Respondent has not filed a formal answer, and because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

II.  Background

In the Superior Court of the State of California, County of Kern (KCSC), Petitioner was convicted of murder, three counts of attempted murder, and discharge of a firearm at an occupied vehicle with enhancements for prior convictions.  On December 18, 2008, Petitioner was sentenced to life without the possibility of parole for the murder, an indeterminate term of 117 years to life, and a determinate term of twenty-one years.  (LD 1; LD 2, 2.)[1]

On March 16, 2010, in case number F056825, the Court of Appeal of the State of California, Fifth Appellate District (CCA) modified the sentence on the enhancements but otherwise affirmed on appeal the judgment of conviction and sentence.  (LD 2, 40.)  The California Supreme Court (CSC) summarily denied Petitioner's petition for review on June 30, 2010, without a statement of reasoning or authority.  (LD 4.)

---

[1] "LD" refers to documents lodged by the Respondent in support of the motion to dismiss.

3

Petitioner's petition for writ of habeas corpus was stamped filed in the KCSC as of June 28, 2011.  The date next to the signature on the petition form and on Petitioner's proof of service of the petition by mail is June 6, 2011.  (LD 5 at iv, and final page.)  The KCSC denied the petition on August 10, 2011, in a reasoned decision.  (LD 6.)

Petitioner's petition for writ of habeas corpus was filed in case number F063482 in the CCA and stamped filed in that court on October 14, 2011.  (LD 7, i.)  The date next to Petitioner's signature on the petition is October 6, 2011.  (Id. at six.) Petitioner's proof of service of the petition by mail is also dated October 6, 2011.  (LD 7, final page.)  On November 21, 2011, the CCA summarily denied the petition without a statement of reasoning or authority.  (LD 8.)

Petitioner's petition for writ of habeas corpus was stamped filed in the CSC in case number S199665 on January 25, 2012.  (LD 9, i.)  The date next to Petitioner's signature on the petition and on Petitioner's proof of service of the petition by mail is January 17, 2012.  (LD 9, iiii and following page.)  The CSC denied the petition on May 16, 2012.  (LD 10.)

Petitioner's petition for writ of habeas corpus filed in the instant action was stamped filed on October 9, 2012.  (Doc. 1, 1.) The date next to Petitioner's signature on the petition form and on Petitioner's proof of service of the petition by mail is September 28, 2012.  (Id. at 7, 116.)

III.   Timeliness of the Petition

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28

4

U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

    A.   Commencement of the Limitations Period

    Under § 2244(d)(1)(A), the "judgment" refers to the sentence imposed on the petitioner.  Burton v. Stewart, 549 U.S. 147, 156-57 (2007).  The last sentence was imposed on Petitioner on December 18, 2008.

    Under § 2244(d)(1)(A), a judgment becomes final either upon the conclusion of direct review or the expiration of the time for seeking such review in the highest court from which review could be

5

sought.  Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001).

The statute commences to run pursuant to § 2244(d)(1)(A) upon either

1) the conclusion of all direct criminal appeals in the state court

system, followed by either the completion of certiorari proceedings

before the United States Supreme Court, or 2) if certiorari was not

sought, then by the conclusion of all direct criminal appeals in the

state court system followed by the expiration of the time permitted

for filing a petition for writ of certiorari.  Wixom, 264 F.3d at

897 (quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998),

cert. denied, 525 U.S. 1187 (1999)).  Neither party has indicated

that Petitioner sought certiorari from the United States Supreme

Court.

Here, Petitioner's direct criminal appeals in the state court

system concluded when his petition for review was denied by the

California Supreme Court on June 30, 2010.  The time permitted for

seeking certiorari was ninety days.  Supreme Court Rule 13; Porter

v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010); Bowen v. Roe, 188

F.3d 1157, 1159 (9th Cir. 1999).

The Court will apply Fed. R. Civ. P. 6(a) in calculating the

pertinent time periods.  See, Waldrip v. Hall, 548 F.3d 729, 735 n.2

(9th Cir. 2008), cert. denied, 130 S.Ct. 2415 (2010).  Applying Fed.

R. Civ. P. 6(a)(1)(A), the day of the triggering event is excluded

from the calculation.  Thus, the ninety-day period commenced on July

1, 2010, the day following the California Supreme Court's denial of

review.  Further applying Rule 6(a)(1)(A), which requires counting

every day, the ninetieth day was September 28, 2010.  Thus, the

judgment became final within the meaning of § 2244(d)(1)(A) on

September 28, 2010.

Therefore, the limitation period began to run on the following day, September 29, 2010, and, absent any tolling, concluded one year later on September 28, 2011.

### B. Statutory Tolling

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2).

An application for collateral review is "pending" in state court "as long as the ordinary state collateral review process is "in continuance"- i.e., "'until the completion of' that process." Carey v. Saffold, 536 U.S. 214, 219-20 (2002).  In California, this generally means that the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge, as long as the petitioner did not "unreasonably delay" in seeking review.  Id. at 221-23; accord, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

The statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case "pending" during that interval. Nino v. Galaza, 183 F.3d at 1006; see, Lawrence v. Florida, 549 U.S. 327, 330-33 (2007) (holding that the time period after a state court's denial of state post-conviction relief and while a petition for certiorari is pending in the United States Supreme Court is not tolled because no application for state post-conviction or other state collateral review is

7

1 pending).

2     Here, the limitation period commenced on September 29, 2010.
3 Although Petitioner's first state habeas petition was stamped filed
4 in the KCSC on June 28, 2011, the date the petition was signed was
5 June 6, 2011.

6     Habeas Rule 3(d) provides that a paper filed by a prisoner is
7 timely if deposited in the institution's internal mailing system on
8 or before the last day for filing.  The rule requires the inmate to
9 use the custodial institution's system designed for legal mail;
10 further, timely filing may be shown by a declaration in compliance
11 with 28 U.S.C. § 1746 or by a notarized statement setting forth the
12 date of deposit and verifying prepayment of first-class postage.
13 Id.  Habeas Rule 3(d) reflects the "mailbox rule," initially
14 developed in case law, pursuant to which a prisoner's pro se habeas
15 petition is "deemed filed when he hands it over to prison
16 authorities for mailing to the relevant court." Houston v. Lack,
17 487 U.S. 266, 276 (1988); Huizar v. Carey, 273 F.3d 1220, 1222 (9th
18 Cir. 2001).  The mailbox rule applies to federal and state petitions
19 alike.  Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010)
20 (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003),
21 and Smith v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)).  The
22 mailbox rule, liberally applied, in effect assumes that absent
23 evidence to the contrary, a legal document is filed on the date it
24 was delivered to prison authorities, and a petition was delivered on
25 the day it was signed.  Houston v. Lack, 487 U.S. at 275-76; Roberts
26 v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Campbell v.
27 Henry, 614 F.3d 1058-59; Lewis v. Mitchell, 173 F.Supp.2d 1057, 1058
28 n.1 (C.D.Cal. 2001).  The date a petition is signed may be inferred

8

to be the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule.  Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005).  However, if there is a long delay between the alleged mailing and receipt by a court, a district court may attribute the discrepancy to various causes, including the court, the postal service, the prison authorities, or the prisoner himself.  See, Koch v. Ricketts, 68 F.3d 1191, 1193 n.3 (9th Cir. 1995) (concerning analogous Fed. R. App. P. 4(c)).

Here, the date on the petition form next to the signature and on the proof of service is June 6, 2011.  Respondent has not introduced any evidence to rebut the presumption of the mailbox rule that the date of signature was the date of delivery of the petition to prison authorities for mailing.  The Court will liberally apply the mailbox rule.  It is concluded that pursuant to the mailbox rule, Petitioner constructively filed the petition in the KCSC on June 6, 2011.

Thus, the statutory limitations period ran from September 29, 2010, until the constructive filing of the first state habeas petition on June 6, 2011, for a total of 250 days.

Respondent does not argue that any of Petitioner's three state habeas petitions was improperly filed or that there was unreasonable delay between the filing of the various petitions.  (Doc. 17, 4:5-6.)  Although the time after the finality of the state appellate proceedings and before the filing of the first state habeas petition in the KCSC was not tolled, Petitioner is entitled to tolling for the period of time during which the first state habeas petition was

9

1  pending from June 6, 2011, through August 10, 2011, the date the
2  KCSC denied the petition, for sixty-six (66) days.

3      In Carey v. Saffold, 536 U.S. 214, the Court liberally
4  construed the term "pending" in § 2244(d)(2) to mean that in the
5  absence of undue delay, an application for post-conviction relief is
6  pending not only between filing and denial, but also during the gaps
7  or "intervals between a lower court decision and a filing of a new
8  petition in a higher court" and until the California Supreme Court
9  denies review.  Id. at 223; see, Biggs v. Duncan, 339 F.3d 1045,
10 1048 (9th Cir. 2003).  Here, in filing his state habeas petitions,
11 Petitioner was proceeding up the hierarchy of state courts with his
12 claims.  Thus, Petitioner is entitled to "gap" tolling for the
13 period between the denial of his KCSC petition on August 10, 2011,
14 and the filing of his habeas petition in the CCA in October 2011, a
15 period of fifty-six (56) days.

16     Pursuant to the mailbox rule, and in the absence of any
17 evidence to rebut the controlling presumption, Petitioner
18 constructively filed his petition in the CCA on the date he signed
19 the petition, namely, October 6, 2011.  Petitioner is entitled to
20 statutory tolling for the period of the pendency of the petition
21 from October 6, 2011, until November 21, 2011, the date the petition
22 was denied, for a period of forty-seven (47) days.  In addition,
23 Petitioner is entitled to "gap" tolling between the CCA's denial of
24 the petition and Petitioner's filing of a petition in the CSC for a
25 period of fifty-six (56) days.

26     Pursuant to the mailbox rule, and in the absence of evidence to
27 rebut the presumption, Petitioner constructively filed his petition
28 in the CSC on January 17, 2012, the date of signature on the

petition and the proof of service.  Petitioner is entitled to
statutory tolling while the petition was pending in the CSC from
January 17, 2012, until May 16, 2012, the date the petition was
denied by the CSC, for a period of 121 days.

In summary, the statutory limitations period ran for 250 days
from September 29, 2010, through June 5, 2011, before the first
state petition was filed.  The statute was tolled during the
pendency of state habeas proceedings and the gaps between those
proceedings from June 6, 2011, until May 16, 2012.  When the
statutory period began running again on May 17, 2012, after the
denial of the CSC petition, 115 days of the limitations period
remained.  The limitations period expired 115 days later on
September 8, 2012.

Petitioner's federal petition was stamped filed here on October
9, 2012.  (Doc. 1, 1.)  The petition form and the proof of deposit
of the petition in the United States mail were dated September 28,
2012 (doc. 1, 7, 116).  What appears to be the outgoing mail log for
Petitioner's legal mail reflects that legal mail from the prison was
sent out to the Clerk of this Court on October 4, 2012.  (Doc. 22,
26.)  Petitioner states in his opposition that Petitioner "proceeded
and sent/submited (sic) federal habeas On October 4, 2012, but I
assume due too (sic) mail delay petition did not get filed until
October, 9, 2012, 35 days over Petitioner's required deadline."
(Doc. 19, 2.)  There is no evidence before the Court concerning the
protocol for prison mailing and the dating of mail logs.  It is not
clear whether or not the date a prisoner deposits outgoing mail for
mailing is the same date that the log reflects that mail went out.
The Court notes that in other instances, there is a short time

interval between the date Petitioner states that he mailed legal mail and the date noted on the mail log.[2]  Petitioner's declaration under penalty of perjury is clear that he deposited the petition for mailing on the same date that he signed the petition.  Liberally applying the mailbox rule, the Court concludes that the petition was constructively filed here on the date the petition was signed, namely, September 28, 2012.

Thus, the petition was constructively filed twenty days after the limitations period expired on September 8, 2012.

C.   Equitable Tolling

Petitioner argues that the timely filing of his petition was prevented by extraordinary circumstances beyond his control, including 1) the delayed notification of the CSC's denial of his habeas petition due to Petitioner's transfer to a new institution; 2) obstructed or limited access to the law library combined with Petitioner's lack of education; and 3) loss of Petitioner's legal property, including transcripts and other portions of the state court record, in an effort to obtain counsel that preceded the filing of the federal petition.  Petitioner argues that he was diligent in his attempts to file a timely petition.

The one-year limitation period of § 2244 is subject to

---

[2] For example, Petitioner declared under penalty of perjury that he boxed and addressed documents to an attorney and completed procedures for sending legal mail on August 7, 2012, but the mail log reflects a date of August 14, 2012.  (Doc. 2, 5; doc. 22, 26.)  Likewise, Petitioner's consent form filed here on January 14, 2013, is dated December 20, 2012, but the outgoing mail log of mail to the Clerk of this Court reflects a date of December 24, 2012.  (Doc. 9; doc. 22, 26.) Petitioner declares under penalty of perjury that he deposited a motion for mailing on April 16, 2013 (doc. 19, 4), whereas it was logged as outgoing on the mail log on April 18, 2012 (doc. 22, 26).  Because keeping a mail log is generally performed by prison staff, there is no basis for assuming that Petitioner had control over the mail procedures or the precise dates recorded on the mail log.

equitable tolling where the petitioner shows that he or she has been diligent, and extraordinary circumstances have prevented the petitioner from filing a timely petition.  Holland v. Florida, − U.S. −, 130 S.Ct. 2549, 2560, 2562 (2010).  Petitioner bears the burden of showing the requisite extraordinary circumstances and diligence.  Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010). A petitioner must provide specific facts regarding what was done to pursue the petitioner's claims to demonstrate that equitable tolling is warranted.  Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006). Conclusional allegations are generally inadequate.  Williams v. Dexter, 649 F.Supp.2d 1055, 1061-62 (C.D.Cal. 2009).  The petitioner must show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).  Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied.  Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005).  A prisoner's or counsel's failure to recognize that a state filing was unreasonably delayed under California law is not the result of an "external force" that rendered timeliness impossible, but rather is attributable to the petitioner as the result of his own actions. Velasquez v. Kirkland, 639 F.3d 964, 969 (9th Cir. 2011).

The diligence required for equitable tolling is reasonable diligence, not "maximum feasible diligence."  Holland v. Florida, 130 S.Ct. at 2565.  However, "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions

swallow the rule." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (quoting Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).  A petitioner seeking equitable tolling must demonstrate reasonable diligence while exhausting state court remedies as well as while attempting to file a federal petition during the period after the extraordinary circumstances began. Roy v. Lampert, 465 F.3d at 971.  The effort required is what a reasonable person might be expected to deliver under his or her particular circumstances. Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011).  Because a pro se petitioner's habeas filings must be construed with deference, a court will construe liberally such a petitioner's allegations regarding diligence. Roy v. Lampert, 465 F.3d at 970.

A prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter. Ramirez v. Yates, 571 F.3d at 997; White v. Ollison, 530 F.Supp.2d 1077, 1083-84 (C.D.Cal. 2007) (finding the statute equitably tolled for approximately two and one-half months between the superior court's denial of the petitioner's habeas petition and the date on which the petitioner received notice of the court's denial, and collecting authorities); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1061-62 (C.D.Cal. 2001) (finding the statute equitably tolled for the period following a court's ruling and the petitioner's receipt of notice of it, where the petitioner had not been notified of the state supreme court's denial of her habeas petition for more than five months after the denial because the prison returned the mailed notification of the denial to the state supreme court because the prisoner's prison number did not appear on

14

the envelope, despite the petitioner's having provided her prisoner number to the court); Lopez v. Scribner, 2008 WL 2441362, *7-*9 (No. CV 07-6954-ODW (JTL), C.D.Cal. Apr. 11, 2008) (assuming that the statute was equitably tolled during the time between a court's denial of a first state habeas petition and the date the petitioner learned of the denial, where the petitioner did not receive notice of the court's September 2006 denial of a petition filed in August 2006 until the petitioner sought a ruling in February 2007, and the delay made it impossible for the petitioner to file a timely federal habeas petition).  To determine whether a petitioner is entitled to such tolling, it must be determined on what date the petitioner received notice, whether the petitioner acted diligently to receive notice, and whether the alleged delay of notice caused the untimeliness of the filing and made a timely filing impossible. Ramirez v. Yates, 571 F.3d at 998.

Petitioner submitted a declaration after he filed his opposition documents in which he stated that the contents of the "foregoing" documents were true under penalty of perjury under the laws of the state of California, and he identified his opposition documents (styled as motions) as the documents to which his declaration should be attached.  (Doc. 21, 1-2.)

Further, he has submitted documents that corroborate his allegations concerning the delay and his diligent efforts to follow up concerning the state habeas petition that was denied on May 16, 2012.  Respondent has not refuted the showing or otherwise challenged Petitioner's showing.

Petitioner states that he arrived at the California State Prison in Los Angeles County (CSP-LAC) on May 24, 2012.  The Court

15

takes judicial notice of the docket and documents filed in <u>Stefan E.</u>
<u>Evans v. Unknown</u>, case number 2:11-cv-1018-GGH, a proceeding
previously filed by Petitioner in the Sacramento division of this
Court, in which on March 14, 2011, Petitioner sought an extension of
time to file a federal petition.  (Doc. 1.)[3]  The address of
Petitioner set forth on the request for an extension of time was
Kern Valley State Prison, Delano, California.  (<u>Id.</u> at 1, 3.)  Thus,
Petitioner previously was located at a prison other than CSP-LAC.
Further, in the present proceeding, Petitioner also submitted a copy
of a "CDCR Inmate ID," with the date of May 24, 2012, an address of
"CALIFORNIA STATE PRISON," and Petitioner's CDCR identification
number on it.  (Doc. 19, ex. A, 6.)  It thus appears that Petitioner
arrived at the CSP-LAC on May 24, 2012.

Petitioner states that because of his transfer to a new prison,
he did not receive notification of the CSC's denial of his petition
until on or about June 15, 2012.  (Doc. 22, 7.)  Petitioner
submitted a copy of the front of an envelope addressed to Petitioner
at the "CA State Prison, Los Angeles Co." in Lancaster, California,
with a partially missing postmark but which includes the word "MAY."
The notation "not here" appears in handwritten script on the
envelope as well as the figures "B1 228."  (Petr.'s Ex. A, Doc. 19,
6.)

The Court takes judicial notice of a request for an extension
of time to file a federal petition filed on July 2, 2012, in <u>Stefan</u>
<u>E. Evans v. Unknown</u>, case number 2:11-cv-1018-GGH, in which

---

[3] The Court may take judicial notice of court records.  Fed. R. Evid. 201(b);
<u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Valerio v. Boise</u>
<u>Cascade Corp.</u>, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), <u>aff'd.</u>, 645 F.2d 699 (9th
Cir. 1981).

Petitioner stated that after a delayed bed space assignment due to temporary placement in an administrative segregation unit because of overcrowding, he was finally housed in a mainline facility and informed the CSC of his new address and location; days following, he received the denial via re-routed mail. (Doc. 8, 2.)  Petitioner appended to the request a copy of a letter written by Petitioner to the clerk of the CSC dated June 5, 2012, in which Petitioner informed the CSC of his new address and case number.  The document bears a stamp stating "RECEIVED JUN 11 2012 CLERK SUPREME COURT." (Id. at 4.)  Petitioner also submitted to this Court a copy of what appears on its face to be a log of outgoing mail that reflects that mail from Petitioner was sent from the prison to the CSC at San Francisco, California, on June 7, 2012.  (Doc. 22, 18.)  Further, what appears to be a copy of an incoming mail log reflects that Petitioner received mail from the CSC in San Francisco on June 15, 2012; the log states that Petitioner's yard and housing were "B1" and "228" respectively.  A check of the docket in CSC case number S199665 show no entries other than the filing of the petition and the denial order.

　　　Petitioner's documentation shows that less than two weeks after his arrival at CSP-LAC, Petitioner notified the CSC of his new address in a letter that referred to his case number, adverted to the Petitioner's uncertainty as to whether or not the court had sent any mail to his last address, and asked that all current and future mail be forwarded to the new address.  This post-move follow-up by Petitioner with respect to his address and the pendency of his petition was prompt.  It appears that Petitioner proceeded with reasonable diligence in advising the CSC of his new location and

indicating his uncertainty as to the status of the case and the possibility of undelivered mail.  Further, it may be inferred that Petitioner received the CSC's denial on June 15, 2012, thirty (30) days after the date the CSC filed its order of denial.

Further events in the chronology leading to the filing of the petition here will be considered in determining whether Petitioner has shown that the delay of approximately one month in his receipt of notification from the CSC actually caused Petitioner to be unable to file the petition here on time.  As previously noted, in the previous proceeding in this Court, Petitioner renewed his motion for an extension of time to file a federal petition on July 2, 2012, after the first extension of time had been dismissed without prejudice.  (Evans v. Unknown, 2:11-cv-01018-GGH, doc. 8, 6.)  By order dated July 31, 2012, the Court denied the motion and stated that the motion would be placed in the file and disregarded; the order was served by mail on Petitioner on the same date.  (Id. at doc. 9.)  Thus, it appears that within two weeks of having received notice of the CSC's denial, Petitioner had prepared and filed a request for an extension of time from the Sacramento Division of this Court.

Petitioner states that after the request for an extension of time was denied, he sought legal counsel and attempted to retain attorney Richard R. Williams, making "verbal contact" on or about August 1, 2012.  (Doc. 19, 2.)  In a motion for an extension of time that was stamped as filed in this action on October 9, 2012, Petitioner declared under penalty of perjury that on August 7, 2012, he boxed up his only copy of all his trial transcripts, briefs, petitions, appeal documents, and excess legal paperwork and

18

addressed it to Mr. Williams, an attorney, at a specified address after having gone through all required protocol to send legal mail, including trust account authorization for the proper mailing fee. (Doc. 2, 5.)  He informed his family, who were asked to correspond with Williams and confirm that the mail was delivered, but efforts to contact the prison, post offices, and Williams were unsuccessful, and the mail did not arrive at Mr. Williams' office; as of September 28, 2012, the date of the declaration, Mr. Williams had not received the papers.  (Id.)  The outgoing legal mail log indicates that on August 14, 2012, legal mail from Petitioner was sent to "RICK WILLIAMS ATTY AT LAW."  (Doc. 22, 26.)  In this action, Petitioner also submitted 1) a copy of his trust account statement, showing that on August 16, 2012, the sum of $53.30 was withdrawn from Petitioner's trust account for legal mail (doc. 22, 22); and 2) copies of documentation of his inmate institutional appeal regarding the loss of his legal mail (doc. 22, 12-24).

It thus appears that after his unsuccessful attempt in July 2012 to obtain an extension of time from this Court to file a federal petition, Petitioner immediately sought to secure counsel to prepare the petition, including an effort to send his legal papers to the attorney in early August.  Petitioner followed up with family and the institution when it appeared that the legal papers sent to the attorney had been lost.  Petitioner states that two or three weeks after he sent the documents to Williams, he realized that all was lost and that he had no choice but to begin preparation of the federal habeas petition without a single copy of his documents. (Doc. 19, 2.)

Thus, considering all the documentation, it appears that after

19

1  unsuccessfully attempting to secure counsel, Petitioner began

2  preparation of the petition in earnest in early September 2012.  He

3  continued to demonstrate concern with the timeliness of his petition

4  in late September when he again sought an extension of time to file

5  the petition.

6      With respect to the period in September 2012 when Petitioner

7  was attempting to complete his petition, Petitioner states generally

8  that there was an abundance of paperwork (the petition submitted to

9  this Court is 116 pages long) in addition to institutional lockdowns

10 and minimal law library access.  Petitioner states that it was thus

11 nearly impossible for Petitioner to make copies of all the

12 paperwork; however, Petitioner proceeded.  (Doc. 19, 2.)  A review

13 of the petition filed in this Court reflects that it is an amalgam

14 of the material in Petitioner's habeas petition filed in the CSC and

15 the issues raised in his direct appeal from the judgment.

16     Petitioner's pro se status is not itself an extraordinary

17 circumstance.  Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir.

18 2010.)  A pro se petitioner's confusion or ignorance of the law is

19 not alone a circumstance warranting equitable tolling.  Rasberry v.

20 Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).  Further, limited

21 access to a law library and a copy machine has in some circumstances

22 been characterized as a routine restriction of prison life and not

23 necessarily an extraordinary circumstance that renders timely filing

24 impossible.  See, Ramirez v. Yates, 571 F.3d at 998 (where the

25 petitioner was housed in administrative segregation with limited law

26 library access and associated routine security restrictions).

27     However, in other circumstances, it has been held that denial

28 of access to legal papers where there is only a very short portion

20

of the limitations period remaining can in fact render timely filing by a pro se petitioner impossible.  Lott v. Mueller, 304 F.3d 918, 922-23 (9th Cir. 2002) (remanding the matter for a determination of entitlement to equitable tolling where a petition was untimely for seven or twenty days, depending on the applicability of the mailbox rule; the computation of the filing deadline was difficult and uncertain even for informed legal minds; and the petitioner was without access to his legal papers for weeks and received them under circumstances that he could have believed that he had only six days remaining in which to file a timely petition); Spitsyn v. Moore, 345 F.3d at 801 (holding that an expectation that a prisoner will prepare a pro se habeas petition is unrealistic where the petitioner is without his legal papers due to counsel's possession of them and has been diligent in attempting to secure those papers); see, Sossa v. Diaz, - F.3d -, 2013 WL 4792941, *8-*9 (No. 10-56104, 9th Cir. Sept. 10, 2013) (remanding the case for a determination of entitlement to equitable tolling where a petition was filed two days late, and the petitioner had alleged that despite attempts to grieve limited law library access, he was unable to use the prison's law library and copier successfully due to lock-downs, prison staff's loss of paperwork, and copy machine malfunction).

Here, it appears that throughout the period in which Petitioner filed his collateral state challenges, Petitioner diligently proceeded.  Petitioner's transfer to a new institution, the relatively lengthy delay in notification of the state court's denial of his habeas petition, the apparent loss of his legal papers in the mail en route to potential counsel, the attendant impossibility of obtaining counsel, and the relatively short period of time remaining

for preparation of a federal petition when these circumstances

converged at the end of the limitations period all combined to

prevent timely filing.  The present case appears to be a situation

comparable to that recognized in Lott v. Mueller, 304 F.3d 923-24,

in which a "confluence of numerous factors" beyond a prisoner's

control contributed to render timely filing impossible.  Id. at 923-

24.  The period during which various circumstances operated to

impede Petitioner's progress in the present case exceeds in length

the twenty days that passed between the running of the statute and

Petitioner's filing of his federal petition.  The Court is mindful

that the impossibility requirement should not be too strictly

imposed because imposing extraordinarily high evidentiary standards

on pro se prisoner litigants is contrary to the "grain" of our

precedent in light of the unusual and unique obstacles faced by pro

se prisoner litigants, such as difficulty in obtaining

representation by counsel, limitations in access to legal materials

and proof, and other obstacles to complying with procedural

deadlines.  Sossa v. Diaz, 2013 WL 4792941 at *9; see, Rand v.

Rowland, 154 F.3d 952, 958 (9th Cir. 1998).

The Court concludes that the documentation before the Court

shows that Petitioner is entitled to equitable tolling of the

statute of limitations sufficient to render his petition timely.

Accordingly, it will be recommended that Respondent's motion to

dismiss the petition as untimely be denied.

IV.  Petitioner's Motions

Petitioner's opposition to the motion to dismiss came styled as

a motion to excuse harmless negligence and motion to appoint counsel

(doc. 19), a declaration regarding his motion to appoint counsel

(doc. 21), and supplementary opposition (doc. 22).  By separate order the Court has deemed the Petitioner's motion to be in part opposition to the motion to dismiss and in part a motion for counsel.  The motion for counsel was denied by separate order. Petitioner's motions have been considered fully as opposition to the motion to dismiss.  Accordingly, it will be recommended that Petitioner's motions be dismissed as moot.

## V.   Recommendations

In accordance with the foregoing, it is RECOMMENDED that:

1) Respondent's motion to dismiss the petition as untimely be DENIED; and

2) Petitioner's motions be DISMISSED as moot; and

3) The matter be REFERRED back to the Magistrate Judge for further proceedings, including directing Respondent to file an answer to the petition.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the

23

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __September 13, 2013__         ___/s/ *Barbara A. McAuliffe*___
                                         UNITED STATES MAGISTRATE JUDGE