UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFAN E. EVANS, | No.  1:12-cv-01652-LJO-SKO  HC |
| Petitioner, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| DEBBIE ASUNCION, Warden, | |
| Respondent. | |

Petitioner, a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, presents six grounds for habeas relief, concerning sufficiency of the evidence, ineffective assistance of counsel, and qualification of an expert gang witness.  The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  The undersigned recommends that the Court deny the petition.

I.      **Factual Background**

On August 19, 2006, Robert Jay Vandergriff, Michael Hodges, Wesley Ellison, and Preston Caldwell spent the day together, smoked marijuana, and went to a wedding in the evening.  After the men left the wedding together, Vandergriff drove them in his blue Ford Explorer to an apartment complex on South Real Road in Bakersfield so that Hodges and Ellison could buy ecstasy.  Ellison had previously purchased drugs from the same apartment.  Upon

1

arrival, Vandergriff parked the car in the apartment's parking lot, and Ellison got out to buy the drugs while the others waited in the car.  None of the men were armed.

On the same night, Petitioner's sister, Julia Evans, who was visiting the family, asked Petitioner to take her to Taco Bell.  (Julia had awakened early that day to travel to the coast.) Petitioner drove Julia and her five-year-old son Jeremiaha in Julia's red Pontiac Grand Am but did not take them to Taco Bell.  As Petitioner drove around, Julia fell asleep in the passenger seat. When she awoke, the car was parked next to a dumpster and against a brick wall.  Petitioner told Julia to wake up and be ready to drive soon.  She moved to the driver's seat and fell back asleep.

Waiting for Ellison, Vandergriff saw Petitioner walk past.  No one in the SUV spoke to Petitioner or provoked him in any way.

On the street, across from the parking lot, Christopher Simington got out of his orange and gold classic car to speak with a woman in another car.  After a few minutes, Simington noticed that a man in a powder blue shirt was pacing back and forth behind him.  Worried about an impending carjacking, Simington and his friend got back into their respective cars to drive away. Simington stopped in the middle of the street and asked the man in the blue shirt whether he was there for Simington.  The man replied that he was there for "them," and pointed to a blue Explorer that was approaching the street.

Meanwhile, Ellison returned to right rear seat of the Explorer.  Hodges sat on the left rear seat, and Caldwell was in the front passenger seat.  Vandergriff drove toward Real Road and stopped at the curb to allow traffic to clear.  Both Vandergriff and Ellison noticed Simington leaning out the window of an orange and gold car that was stopped in the middle of the street.

The man in the blue shirt turned from Simington and fired multiple shots into the Explorer.  Simington testified that the man "basically stuck the gun in their car."

///

2

Vandergriff heard six gunshots and hit the gas.  Looking toward the sound of the gunfire, he saw the gunman shooting and fire coming out of the gun.  Ellison testified that the gunfire came from the left side of the SUV where Hodges was sitting.  The gunman stood just two feet from the rear window; Ellison recognized him as Petitioner, who had attended the same junior high school as Ellison.[1]

Caldwell, who jumped from the Explorer and ran away, was not wounded.  Vandergriff was shot in the arm and suffered permanent injury.  Ellison was shot in the stomach; the bullet lodged in his liver.  Hodges was struck twice in the head and once in the neck; he died of his wounds.  Vandergriff picked up Caldwell as he drove away.  Caldwell took over driving since Vandergriff was in great pain.  One of the four men called 911, and Caldwell drove to the hospital.

In the Grand Am, Julia awoke to hear someone shouting something like, "Are you here for me?"  As she heard eight or nine gunshots, she grabbed her son and ducked down.  Petitioner jumped back into the Grand Am and told Julia they were shooting at him.  He did not say he had shot a gun.

Deborah Miller, a resident of South Real Road, heard gunshots and looked out her window.  She saw two men hiding behind a vehicle.  The men looked down the road to where the gun was fired, got into the car, and fled.

Julia drove from the scene; Petitioner told her to head to a friend's house near Lowell Park.  He then called someone on Julia's cell phone and said, "East down alright cuz bye."  When a police car approached from behind to stop the Grand Am, Petitioner threw a gun out of the window just before Julia stopped for the police.  Julia testified that Petitioner had gotten the gun from his friend, "Little Diesel," the day before.

---

[1] Ellison testified that he and Petitioner were neither friends nor rivals, but simply attended the same school.

3

Bakersfield Police Officer, Chris Dalton, stopped the Grand Am because it matched the description of the gunman's vehicle.  Petitioner, Julia, and Jeremiaha were in the car.  Petitioner was wearing a blue shirt, blue jeans, and blue-and-white shoes.

When police interviewed Jeremiaha, he told them that Petitioner had thrown a gun from the car just before they stopped.  Based on that information, police recovered a .38 caliber revolver about 500 yards from the traffic stop.  Jeremiaha told officers that Petitioner got the gun from the car and "then they started shooting."  Jeremiaha said that he saw two men wearing masks who were shooting and that after defendant got in the car and told them to go, he looked back and saw ten guys shooting.

Testing revealed that a spent hollow-point bullet recovered inside the Explorer had been fired from the recovered .38 revolver.  A copper jacket and bullet fragments recovered from Hodge's brain were also consistent with having been fired from that gun.  Particles of gunshot residue were on Petitioner's left palm and the backs of his left and right hands.

No weapons were recovered from the Explorer.  No evidence indicated that any shots had been fired from the Explorer.  Police did not check the route of the Explorer for discarded guns or check the victims' hands for gunshot residue.

At trial, Vandergriff and Ellison identified Petitioner as the gunman.  Simington claimed that he could not identify the gunman and denied having identified Petitioner as the gunman at an in-field show up on the night of the shooting.[2]  A police officer testified that Simington identified Petitioner as the gunman in a field "show-up" the night of the shooting.

Ellison's cell phone contained photographs of Ellison and Hodges throwing Eastside Crips gang signals.  Ellison denied that he was a gang member but conceded that many of his family members were Eastside Crips.

---

[2] Simington was reluctant to testify against Petitioner.  His August 2006 statement to police was admitted into evidence as a prior inconsistent statement.

Police recorded a jailhouse telephone call from Petitioner to Julia.  Petitioner told Julia to say that she heard eight or nine shots fired since he could not have been the only one shooting if there were that many shots.  He told Julia that she and Jeremiaha should say that when Petitioner returned to the car, he said that they were shooting at him and also to say that they could see them shooting at Petitioner.  He emphasized that police needed to know that the shooting was self-defense and not intentional.

Petitioner told Julia that although he wished she had taken the Fifth Amendment instead of talking to police, she should not blame herself because things did not go better.  He encouraged her to reiterate that she was half-asleep and to tell the truth.  He added that the prosecution could not cross-examine Jeremiaha because he was a child.

Police also recorded a jailhouse telephone call from Petitioner to his cousin Johnny Jenkins.  Petitioner told Johnny that things looked bad and that Julia had told police the Petitioner had made a phone call.  Petitioner reported that he told police that he had called Johnny to tell him to avoid the area.

At trial, Petitioner testified that he did not tell police the truth in his August 2006 statement.  His objective during the police interview was to say what he thought police wanted to hear so that Julia would not be held in connection with the shooting.  Petitioner testified that prior to August 19, 2006, he had been shot at thirty times and wounded on three occasions.  He usually carried a gun for self-defense but had never fired it.  He denied that he had obtained the gun from Little Diesel and testified that he obtained it the night of the shooting from a car parked in West Side Crip territory which he knew to be a place where a loaded gun would be available.  He fired the gun only after shooting began and he saw a muzzle flash from the blue SUV.

///

///

5

## II.     **Procedural Background**

Petitioner was tried before a jury in August 2008.  The jury found Petitioner guilty of first degree murder (Cal. Penal Code § 187(a)) with special circumstances, that the murder was intentional, Petitioner was a member of a criminal street gang, and the murder was carried out to further the gang's activities (Cal. Penal Code § 190.2(a)(22)).  The jury also convicted Petitioner of three counts of premeditated attempted murder (Cal. Penal Code § 664/187(a) and § 189) and one count of discharging a firearm at an occupied vehicle (Cal. Penal Code § 246).  The jury found that (1) all of the offenses were committed for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)), and (2) Petitioner was a principal and personally discharged the firearm in the commission of the offenses that cause great bodily injury or death (counts 1, 2 , 3, and 5) (Cal. Penal Code § 12022.53(d) and (e)(1)).

Petitioner waived his right to a jury trial on the bifurcated portion of trial addressing his prior serious and felony convictions.  The trial court found the Petitioner had one prior strike conviction (Cal. Penal Code § 667(b)-(i)), one prior serious felony conviction (Cal. Penal Code § 667(a)), and two prior prison terms (Cal. Penal Code § 667.5(b)).  The trial court sentenced Petitioner to an aggregate term of life without possibility of parole, plus a determinate term of 21 years and an indeterminate term of 117 years to life.

Petitioner filed a direct appeal to the California Court of Appeals.  He contended that (1) the trial court improperly permitted a police officer to testify as a gang expert; (2) insufficient evidence supported the gang special circumstance and gang enhancements; and (3) one of the firearm enhancements was imposed improperly.  The Court of Appeals affirmed the convictions, but corrected Petitioner's sentence.  The California Supreme Court denied review on June 30, 2010.

///

On June 28, 2011, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court in which he claimed that (1) insufficient evidence supported a specific intent to attempt to murder Ellison, Vandergriff, and Caldwell, and (2) counsel was ineffective in failing to argue self-defense and the lack of specific intent for the attempted murders as mitigating circumstances.  The superior court denied the petition, finding that sufficient evidence upheld the convictions and no evidence supported a claim of self-defense.  The Court of Appeals summarily denied the petition.  On May 16, 2012, the California Supreme Court denied review.

On October 9, 2012, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## III.   Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997).  Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings.  *Id.*  Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71.  To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision.  *Id.*  The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  *Id.* at 72.  The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  The federal court must apply the presumption that state courts know and follow the law.  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent.  *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Lockyer*, 538 U.S. at 75-76.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, the AEDPA standard is difficult to

8

satisfy since even a strong case for relief does not demonstrate that the state court's

determination was unreasonable.  *Harrington*, 562 U.S. at 102.

## IV.   <u>Due Process: Testimony of Unqualified Gang Expert</u>

In his fifth ground for writ of habeas corpus (Doc. 1 at 47-56), Petitioner contends that

his rights to due process and a fair trial were violated by the trial court's permitting Officer

Mason Woessner to testify as an expert witness.

Following a pretrial hearing under Cal. Evid. Code § 402, the trial court ruled, over

Petitioner's objection, that Woessner satisfied the requirements to testify as an expert witness:

> I do find that the witness has met those minimum requirements that
> would allow the Court to find that he does have special knowledge
> as a result of his experience, training, and education which is
> sufficient to qualify him as an expert both on the subject of criminal
> street gangs and specifically on the subject of the Westside Crip
> gang in the area of Bakersfield.  And so I do find that he's qualified
> as an expert.

RT 35.

At trial, Petitioner's counsel repeatedly objected to Woessner's testimony, contending that

it lacked foundation and constituted hearsay.  RT 525.  Following a sidebar conference, the trial

court permitted counsel to conduct a second voir dire after which he overruled the defense

objections:

> The Court has considered the foundation objection.  I overrule it
> and deny the—overrule the objection.  And so what I am going to
> tell  the jury is I do find that the witness was qualified to render
> testimony on the subject of criminal street gangs, including
> specifically the gang known as the Westside Crips.

RT 537.

On direct appeal, the Court of Appeals analyzed Woessner's qualifications and

Petitioner's repeated foundation and hearsay objections throughout Woessner's testimony.[3]  The

___

[3] Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision, which is, for this issue, the opinion of the California Court of Appeal, Fifth Appellate District.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).  For those claims raised in state habeas proceedings, the last reasoned decision is that of the Kern County Superior Court.

appellate court opined:

> According to Evidence Code section 801, subdivision (a), expert testimony must be related to a subject that is sufficiently beyond common experience that the opinion of the expert would assist the trier of fact.  Further, a person is qualified to testify as an expert if he has special knowledge, skill, experience, training or education sufficient to qualify him as an expert to which his testimony relates.  Whether a person qualifies as an expert in a particular case, however, depends upon the facts of the case and the witness's qualifications.   The trial court is given considerable latitude in determining the qualifications and its ruling will not be disturbed on appeal unless a manifest abuse of discretion i[s] shown.  This court may find error only if the witness "*clearly lacks* qualification as an expert."  (*People v. Singh* (1995) 37 Cal.App.4[th] 1343, 1377, italics in original.)

> "It is well settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation.  (*In re Frank S.* (2006) 141 Cal.App.4[th] 1192, 1196 (*Frank S.*).)  The subject matter of the culture and habits of street gangs meets the criteria for the admissibility of expert opinion because such evidence is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.  (*People v. Gardeley* (1996) 14 Cal.4[th] 605, 617 (*Gardeley*); *Frank S., supra*, 141 Cal.App.4[th] at pp. 1196-1197.)

> Defendant argues that the trial court abused its discretion when it found Officer Woessner was qualified to testify as the prosecution's gang expert.  Defendant complains Woessner had minimal training and "unspecialized experience—without any recognized academic or professional credential" about gang culture and activities, he had "no academic degree or professional license, and he had not been credentialed as an expert by any recognized and neutral third party."  However, there is no requirement for an officer to possess an academic or professional certification to qualify as a gang expert, and the foundation for an officer's opinion may be based on the officer's experience with "street gangs in general."  (*People v. Olquin* (1994) 31 Cal.App.4[th] 1355, 1370.)  Law enforcement officers have been found qualified to provide expert testimony regarding gangs simply based on their investigative experience.  (*People v. Williams* (1997) 16 Cal.4[th] 153, 196; see also *People v. Ochoa* (2001) 26 Cal.4[th] 398, 438, abrogated on other grounds as stated in *People v. Coombs* (2004) 34 Cal.4[th] 821, 860 [a detective with relevant training my furnish expert opinion concerning the gang-related significance of the defendant's tattoo]; *Gardeley, supra*, 14 Cal.4[th] at p. 617; *People v. Martinez* (2003) 113 Cal.App.4[th] 400, 413-414 [an expert properly testified that a gang ordinarily will exact revenge upon a gang member who reveals gang confidences as motive and intent for crime]; *People v. Gonzalez* (2006) 38 Cal.4[th] 932, 949, fn. 4 [veteran deputy sheriff properly qualified as gang expert based on personal experience dealing with gangs, field work, and conversations with gang members about their activities and culture].)

1
2
*People v. Evans* (Cal.Ct.App. Mar. 16, 2010) (No. F056825) (Lodged Doc. 4 at 20-21) (internal citations and quotation marks omitted).

3

4

5

6
After additional detailed discussion of Petitioner's foundational and hearsay objections, the court concluded that "[t]he trial court did not abuse its discretion when it found Woessner was qualified to testify as the prosecution's gang expert, and Woessner's expert testimony had a proper foundation and was admissible." Lodged Doc. 4 at 24.

7

8

9

10

11

12

13

14

15

16

17

18

19
Issues regarding the admission of evidence are matters of state law, generally outside the purview of a federal habeas court. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). "Although the [U.S. Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see *Williams*, 529 U.S. at 375 . . ., it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101. Since the state appellate court's disposition of Petitioner's appeal was not contrary to or an unreasonable application of Supreme Court precedent, a federal district court may not grant the writ based on the trial court's admission of Woessner's expert testimony.

20
**V.      Due Process: Insufficient Evidence**

21

22

23

24

25
Petitioner alleges as grounds for relief two convictions for which the evidence was insufficient: (1) the three counts of attempted murder (ground 1 (Doc. 1 at 33-34))[4] and (2) commission of the murder to further the activities of a criminal street gang (ground 6 (Doc. 1 at 58-71)). Respondent contends that in each case, the state court reasonably concluded that the evidence was sufficient to support the conviction.

26
*///*

27

28
_____

[4] Aside from the general claim that Petitioner acted in self-defense, the petition does not argue that Petitioner lacked the requisite intent to murder Hodges.

**A.      Standard for Review of an Insufficient Evidence Claim**

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9ᵗʰ Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9ᵗʰ Cir. 1997).

**B.      Sufficiency of Evidence of Attempted Murder**

"Murder is the unlawful killing of a human being, . . . with malice aforethought." Cal. Penal Code § 187(a). An attempt occurs when a person attempts to commit a crime, but fails, or is prevented or intercepted in its perpetration. Cal. Penal Code § 664. Petitioner contends that no substantial evidence supported a finding that he had the requisite intent to kill Vandergriff, Caldwell, or Ellison.

**1.      State Court Decision**

On direct appeal, the California Court of Appeals wrote:

> [Petitioner] has not challenged the sufficiency of the evidence as to his convictions for first degree murder of Hodges and the premeditated attempted murders of Vandergriff, Ellison, and Caldwell, and we note there is overwhelming evidence to support these convictions. [Petitioner] waited in the vicinity of the parking lot and paced back and forth, and Simington believed [Petitioner] was about to carjack him. When Simington asked [Petitioner] if he was coming for him, [Petitioner] said no and that he [had] "come for them." [Petitioner] fired directly into [the] SUV's passenger compartment as it was stopped at the curb. Ellison heard gunshots fired from his left side, looked to his left, and saw [Petitioner] standing at the SUV's window, about two feet away. Vandergriff also looked toward the sound of the gunshots and saw "the guy standing there, shooting," and "fire coming out of a gun." Vandergriff, who was the driver, was hit in the arm. Hodges, who was sitting in the left rear seat, was fatally wounded in the head and neck, and the shots were fired from left to right at a slightly downward angle. Ellison, who was sitting next to Hodges in the right rear seat, was shot in the stomach. [Petitioner's]convictions

1

2
> for first degree murder and premeditated attempted murder are
> clearly supported by the evidence.  (See, e.g., *People v. Martinez*
> (2003) 113 Cal.App.4th 400, 412-414.)

3
> Lodged Doc. 4 at 25-26.

4
Petitioner challenged the sufficiency of the evidence to convict him of the attempted

5
murder counts in his state habeas petition.  The Kern County Superior Court rejected his claim:

6

7

8

9
> Despite the appellate court's ruling, petitioner continues to adhere
> to his position that insufficient evidence supports the conviction.
> Insufficiencies of the evidence claims are not cognizable in habeas
> corpus.   *In re Lindley* (1947) 29 Cal.2d 709, 723.   Where the
> appellate court adversely ruled against petitioner, he cannot raise
> those grounds again in habeas corpus.  *In re Waltreus* (1965) 62
> Cal.2d 218, 225.

10

11
> *In re: Stefan Edward Evans* (Kern County Superior Court Aug 9,
> 2011) (No. HC 012520A), Doc. 1 at 22.

### 2.       Evidence of Petitioner's Knowledge or Intent

12

13
Petitioner contends that "There was no substantial evidence that petitioner specifically

14
intended to [kill] Vandergriff, Ellison, and Caldwell, an element necessary to support a guilty

15
verdict on attempted murder."  Doc. 1 at 23.  Considering the evidence in the light most favorable

16
to the prosecution, as *Jackson* requires, the Court agrees with the state court's conclusion that

17
sufficient evidence supported the conclusion that Petitioner planned to ambush and kill all four

occupants of the Explorer.

18

19
Petitioner argues that there was reasonable doubt of his guilt because the unidentified

20
bullet fragments could have come from a different gun; witness Deborah Miller, who looked out

21
the window of her nearby home, testified that two men were shooting; and Jeremiaha testified

22
that he saw someone shooting at Petitioner.  These factual claims are speculative and not

supported by the evidence.

23

24
No evidence addressed whether any fragments had come from a different gun; the

25
unidentifiable fragments had been recovered from Hodge's brain and were too deformed to link

26
to a particular weapon.  (The bullet was not removed from Ellison's liver.)  Miller testified only

27
that she saw two men ducked down behind a vehicle who fled following the shooting down the

28
street.  Police witnesses testified that Jeremiaha could not have seen the actual shooting from

1  where the Grand Am was parked; Julia testified that she pushed Jeremiaha down in the car when

2  she heard the first gunshot.  While some portions of Jeremiaha's testimony, such as his account of

3  Petitioner's throwing a gun from the car before the police stop, were credible, other portions, such

4  as his claim of a ten-man gun fight, were not.

5        Even if Petitioner's factual contentions were valid, a defendant's due process rights are

6  not violated whenever some contrary evidence of testimony can be gleaned from the record.

7  *Jackson* directs a reviewing court to consider the evidence in the light most favorable to the

8  prosecution, and to assume that the trier of fact weighed the evidence, resolved conflicting

9  evidence, and drew reasonable inferences from the facts in the manner that most supports the

10  verdict.  443 U.S. at 319.  When that standard is applied in this case, the Court must conclude that

11  the state court reasonably concluded that the evidence was sufficient to support the jury's verdict.

12        **C.      Sufficiency of Evidence of Gang Enhancement**

13        In his sixth ground for habeas relief, Petitioner contends that the evidence was insufficient

14  to prove that he had committed the crimes to further the activities of a criminal street gang.  (The

15  parties stipulated that the Westside Crips were a criminal street gang, and Petitioner conceded that

16  he was a member of the Westside Crips.)  Petitioner reasons that since the trial court abused its

17  discretion in permitting Woessner to testify as an expert, no substantial evidence remained to

18  support a conclusion that the shooting was intended to further the activities of the Westside Crips.

19  Because of the state court's conclusion that the trial court acted within its discretion in admitting

20  Woessner's opinion as expert testimony, and this Court's determination not to disturb the state

21  court's reasonable determination, Petitioner's argument lacks basis.

22        The Court of Appeals explained the gang enhancement's statutory basis and standard of

23  review:

24              To prove the gang enhancement, the prosecution must prove that
                the crime for which the defendant was convicted had been
25              committed for the benefit of, at the direction of, or in association
                with any criminal street gang, with the specific intent to promote,
26              further, or assist in any criminal conduct by gang members.  In
                addition, the prosecution must prove that the gang (1) is an ongoing
27              association of three or more persons with a common name or
                common identifying sign or symbol; (2) has as one of its primary
28              activities the commission of one or more criminal acts enumerated

                                    14

in the statute; and (3) includes members who either individually or collectively have engaged in a pattern of criminal gang activity by committing, attempting to commit, or soliciting *two or more* of the enumerated offenses (the so-called predicate offenses) during the statutorily defined period. (*Gardeley, supra*, 14 Cal.4th at pp. 616-617, italics in original.)

Specific intent to *benefit* the gang is not required. What is required is the "specific intent to promote, further, or assist in any criminal conduct by gang members . . . " (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198, italics in original (*Morales*).). Gang membership alone cannot prove the requisite special intent. (*Gardeley, supra* 14 Cal.4th at p. 623.)

As explained in issue I, *ante*, the subject matter of the culture and habits of street gangs meets the criteria for admissibility of expert opinion because such evidence is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. (*Gardeley, supra*, 14 Cal.4th at p. 617; *Frank S., supra*, 141 Cal.App.4th at pp. 1196-1197.) Where an expert witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence that to its admissibility. (*People v. Bolin* (1998) 18 Cal.4th 297, 322.)

Lodged Doc. 4 at 27-28 (internal citations and quotation marks omitted).

The court proceeded to restate the criteria for evaluating expert gang testimony and agreed with Petitioner that a gang expert's testimony alone is not sufficient proof that an offense is gang related. "'[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of or in association with a criminal street gang.'" Lodged Doc. 4 at 29 (quoting *People v. Martinez*, 116 Cal.App.4th 753, 762 (2004)).

The court concluded that the record as a whole provided the necessary evidentiary support for the jury's application of gang special circumstances on count 1, and the gang enhancement on counts 2, 3, and 4. It first noted that the parties stipulated that the Westside Crips were a criminal street gang within the meaning of Cal. Penal Code § 186.22 and that Petitioner did not challenge the sufficiency of the evidence that he was a member of the Westside Crips. Then, in an extensive discussion too lengthy to reproduce here, the state court analyzed the evidence supporting the finding that the crimes were gang related, including (1) Woessner's testimony concerning (a) the nature, culture, and activities of the Westside Crips, and their means of intimidating civilians and

members of rival gangs, and (b) the nature and significance Petitioner's multiple gang-related tattoos, which included various gang-related slogans and images; (2) Julia Evan's account of Petitioner's obtaining a weapon from Little Diesel, whom Woessner identified as a known member of the Westside Crips; (3) the apparent gang ties of Ellison, who testified that multiple family members were Eastside Crips members and whose cell phone had photographs of Ellison and Hodges throwing gang signs; (4) Simington's testimony that Petitioner told Simington that he had "come for" the occupants of the approaching Explorer; (5) Petitioner's return after the shooting to the Westside Crip's stronghold of Lowell Park; (6) Petitioner's cell phone call reporting, "East down alright cuz bye"; (7) Petitioner's admission that he made the phone call and that he thought the occupants of the Explorer were Eastside Crips; and (8) Petitioner's admission that he fired multiple gunshots into the Explorer at close range.  Comparing the evidence to that of several notable California cases addressing the sufficiency of gang evidence, the appellate court found the evidence against Petitioner to be strong and Woessner's opinion to be based in the facts of the case.

The state court reasonably concluded that the jury's determination of the gang enhancement was supported by substantial evidence.

## VI.    Ineffective Assistance of Counsel

Petitioner contends that his Sixth Amendment right to counsel was violated by the counsel's failure (1) to present mitigating evidence to establish that the attempted murders were neither willful, deliberate, or premeditated; (2) to interview Darius Edwards, who would have testified that he saw someone in the Explorer fire a gun; and (3) to present mitigating evidence that Petitioner acted in self-defense.

### A.    Standard of Review

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  "[T]he right to counsel is the right to effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial

1    cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

2           To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate

3    that his trial counsel's performance "fell below an objective standard of reasonableness" at the

4    time of trial and "that there is a reasonable probability that, but for counsel's unprofessional

5    errors, the result of the proceeding would have been different." *Id.* at 688, 694.  The *Strickland*

6    test requires Petitioner to establish two elements: (1) his attorney's representation was deficient

7    and (2) prejudice.  Both elements are mixed questions of law and fact.  *Id.* at 698.

8           These elements need not be considered in order.  *Id.* at 697.  "The object of an

9    ineffectiveness claim is not to grade counsel's performance."  *Id.*  If a court can resolve an

10   ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's

11   performance was deficient.  *Id.*

12          **B.       State Court Opinion**

13          The Kern County Superior Court applied the *Strickland* criteria in addressing Petitioner's

14   petition for writ of habeas corpus.  The court first rejected Petitioner's claim regarding counsel's

15   failure to call Darius Edwards:

16                  The decision to call a witness is a tactical decision left to counsel.
                    *People v. Beagle* (1972) 6 Cal.3d 441, 458.  Petitioner supplies Mr.
17                  Edwards' declaration that he could unequivocally testify that people
                    were shooting at petitioner.  However, the declaration lacks
18                  credibility because it is scant on detail claiming that he was coming
                    from the store and stating that one occupant of the sports utility
19                  vehicle was firing at a person.  He later learned that it was
                    petitioner.
20
                    Mr. Edwards does not state how he is familiar with the case, nor
21                  why he delayed in coming forward with his testimony.  The newly
                    discovered evidence must fundamentally undermine the
22                  prosecution's case not merely cast doubt on it.  *In re Clark* (1993) 5
                    Cal.4[th] 750, 766[;] *People v. Hall* (1981) 30 Cal.3d 408, 421, 425;
23                  *In re Eaniz* (2009) 175 Cal.App.4[th] 142.  Even were this court to
                    accept this witness's statement as credible, it is cumulative since
24                  there already was testimony that the occupants fired on petitioner.
                    Mr. Edward's statement would be cumulative under Cal. Evid.
25                  Code § 352.  It also would not totally undermine the credibility of
                    other witnesses who testified otherwise.  *Clark* at 766.
26
                    Lodged Doc. 4 at 5.
27
     ///
28

                                                   17

1    The court also rejected Petitioner's claims that appellate counsel ineffectively failed to
2    raise a defense of self-defense and to argue as a mitigating circumstance Petitioner's lack of
3    specific intent for the attempted murders.  In addressing earlier issues, the superior court had
4    rejected Petitioner's claim of self-defense, finding no evidence that the four victims possessed
5    weapons or provoked Petitioner by shooting at him, and rejecting Petitioner's claim that no
6    evidence supported a finding that he intended violence against rival gang members. Accordingly,
7    the state court rejected Petitioner's claim that counsel's failure to pursue these arguments
8    constituted ineffective assistance of counsel.  It added, "[A]ppellate counsel need not raise every
9    conceivable objection hoping that one will succeed especially where there is no merit to them."
10   Lodged Doc. 4 at 5.

11   **C.**     **Darius Edwards' Declaration**

12   Edwards executed the declaration on June 3, 2011, in Sayre, Oklahoma.  By that date, the
13   California Supreme Court had already denied review of Petitioner's direct appeal, and Petitioner
14   was presumably preparing his state petition for writ of habeas corpus.  Nothing in the record
15   indicates that Edwards was previously known to be a witness.  In fact, nothing supports a
16   conclusion that Petitioner's trial or appellate counsel even knew about Edwards before conclusion
17   of petitioner's direct appeal.

18   In any event, Edwards himself states that because he did not want to be involved, he
19   claimed that he "didn't see much."  Doc. 1 at 98.  If counsel did not know that Edwards claimed
20   to have seen the occupants of the Explorer shooting at Petitioner, a tactical decision not to
21   interview him could not fall below an objective standard of reasonable representation.

22   In addition, as the state court observed, the credibility of Edwards' vague and conclusory
23   declaration is questionable.  Petitioner provides no basis from which a court could conclude that
24   Edwards' testimony would have overcome the overwhelming evidence that Petitioner was the
25   aggressor, shooting into the Explorer without any apparent provocation.

26   The state court reasonably concluded that counsel's failure to interview Edwards did not
27   constitute ineffective assistance of counsel.

28   ///

18

### D.      Mitigating Evidence that Attempted Murders Were Not Intentional

Petitioner contends that counsel violated his constitutional right of representation by failing to present mitigating evidence to establish that Petitioner lacked the requisite intent to commit the attempted murders.  According to Petitioner, counsel should have argued the presence of another shooter, based on (1) the shooter's position, which indicated that Hodges was the primary target, (2) Miller's testimony that she saw two men shooting, and (3) Jeremiaha's testimony that he saw two men shooting.

As previously discussed, Miller did not testify that she saw two men shooting, but only that she saw two men ducked down behind a vehicle down the street who fled following the shooting.  Similarly, although portions of Jeremiaha's testimony, such as his account of Petitioner's throwing a gun from the car before the police stop, were credible, other portions, such as his claims that he saw two men and later, ten-men, shooting were not.  Police witnesses testified that Jeremiaha could not have seen the actual shooting from where the Grand Am was parked; Julia testified that she pushed Jeremiaha down in the car when she heard the first gunshot.  Even if these alleged facts were true, Petitioner has not carried his burden of proving that counsel's decision not to argue them fell below an objective standard of reasonable attorney performance and that the outcome of the trial would have been different if counsel had argued these alleged facts as mitigating circumstances.  *See, e.g., Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (holding that establishing that counsel erred is not enough, and the petitioner must prove that counsel's representation was unreasonable under prevailing professional norms).

Petitioner's contention that counsel should have argued that there was another shooter, based on his theory that the shooter's position revealed Hodges to be the primary target, makes no apparent sense when the case is considered as a whole.  Multiple witnesses identified Petitioner as the shooter who fired through the driver's side rear window next to Hodge's seat.  No direct evidence indicated the presence of another shooter.  Given the evidence as a whole, if Petitioner's counsel had argued that Hodges was the shooter's target, he would have conceded that Petitioner intended kill Hodges, which Petitioner denied throughout the course of the state proceedings

against him.[5]  Few would contend that such an argument would be within an objective standard of reasonableness, and most would consider such a defense to be unquestionably prejudicial to Petitioner's defense.

## E.   Self-Defense

Finally, Petitioner contends that counsel violated his Sixth Amendment rights by failing to provide evidence that he acted in self-defense.  The Superior Court forcefully rejected this contention, restating the overwhelming evidence of Petitioner's guilt, including (1) Petitioner's admitted gang affiliation; (2) his conduct before and after the shooting; (3) his apparent intent to rob or assault someone based on his actions at the crime scene before the shooting; (4) his obtaining a gun from Little Diesel the day before the shooting; (5) the then-existing war between the Westside Crips and the Eastside Crips; (6) Petitioner's fleeing the scene and discarding the gun; (7) witness testimony that the all the gunshots were fired by a single shooter; and (8) the gunpowder residue on Petitioner's hands and clothing.  Having rejected Petitioner's contention of insufficient evidence, the Superior Court rejected Petitioner's ineffective assistance claim that counsel failed to raise the same argument, stating that counsel need not raise meritless objections.

## F.   Failure to Object to Jury Instructions

The point heading of the first claim states, "Counsel failed to object to [CALJIC 3.31. Concurrence of Act and Specific Intent] & [CALJIC 8.66.1 Attempted Murder—Concurrent Intent Jury Instructions for Counts 2, 3, & 44 [*sic*] when there was no substantial evidence to support Petitioner's specifically intended to kill Vandergriff, Ellison & Caldwell."  Doc. 1 at 33. The content of the discussion following the heading addresses only the sufficiency of the evidence without any reference to jury instructions.  Petitioner did not raise jury instruction claims below.  Accordingly, the Court should not address the question of whether counsel erred in failing to object to jury instructions.

///

///

---

[5] As noted in footnote 4, above, aside from a general claim that Petitioner acted in self-defense, the federal petition abandons the argument made before the state court that Petitioner had no intent to murder Hodges.  The petition offers no explanation for Petitioner's abandonment of claims relating to Hodge's murder.

### G.    Cumulative Error

In a separate section prior to the arguments for habeas relief, the petition contends that when counsel's multiple acts and omissions are considered together, they constitute cumulative error requiring a finding of ineffective assistance of counsel.  Because these findings and recommendations conclude that Petitioner has failed to prove any instance of ineffective assistance under the *Strickland* requirements, there is no cumulative attorney error from which to find ineffective assistance.

### H.    Summary

As long as fair-minded jurists could disagree on the correctness of the state court's determination that a claim lacks merit, a federal court cannot provide habeas relief.  *Harrington*, 562 U.S. at 101; *Yarborough*, 541 U.S. at 664.  The petition fails to establish that the state court unreasonably applied clearly established federal law or unreasonably determined the facts in light of the evidence presented at trial.

## VII.    Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b)   There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B)  the final order in a proceeding under section 2255.

(2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

In the present case, the undersigned concludes that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court declines to issue a certificate of appealability.

## VIII.  Conclusion and Recommendation

The undersigned recommends that the Court dismiss the Petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections, if any, shall be served and

22

filed within **fourteen (14) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 25, 2016**                                    **/s/ Sheila K. Oberto**
                                                                     UNITED STATES MAGISTRATE JUDGE